# Third District Court of Appeal
## State of Florida

Opinion filed July 8, 2026.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D25-2027
Lower Tribunal No. 24-18898-CA-01

————————————

**Mount Sinai Medical Center of Florida, Inc, et al.,**
Petitioners,

vs.

**Luigi Esposito, et al.,**
Respondents.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Lourdes Simon, Judge.

Lash Goldberg, and Martin B. Goldberg, and Jonathan E. Siegelaub, and Alexander G. Strassman, and Jeremy A. Weberman; Waas, Solomon, Mendlestein, & Davis, P.A., and Scott E. Solomon, and Jessica M. Hernandez, for petitioners.

Creed & Gowdy, P.A., and Rebecca Bowen Creed (Jacksonville); Needle & Ellenberg, P.A., and Andrew Ellenberg, and Andrew Needle, for respondents.

Bolin Law Group, and Andrew S. Bolin, Esq., (Tampa) for The Florida Hospital Association, as amicus curiae.

Davis Appeals, PLLC, and Christine R. Davis (St. Petersburg) for The Florida Board of Governors Self-Insurance Programs for the University of Florida J. Hillis Miller Health Center, Florida State University College of Medicine, The Florida International University College of Medicine, and The Florida Atlantic University College of Medicine, as amicus curiae.

Rutledge Ecenia, P.A., and Stephen A. Ecenia and Tana D. Storey (Tallahassee) for The Florida Birth-Related Neurological Injury Compensation Association, as amicus curiae.

Before FERNANDEZ, MILLER, and BOKOR, JJ.

MILLER, J.

Petitioners, Mount Sinai Medical Center of Florida (the "Hospital") and several of its non-clinician executives (the "Executives"), seek a writ of certiorari quashing a lower court order denying their motion to abate the underlying negligence lawsuit pending a determination by an administrative law judge ("ALJ") as to whether the claims are compensable under the Florida Birth-Related Neurological Injury Compensation Plan (the "NICA").[1] We grant the petition, in part.

---

[1] The Hospital and Executives devoted most of their briefs to arguing the scope of the ALJ's authority. But oral arguments were narrowly focused on the compensability prerequisite. We find the limitations on the power of the administrative state urged by now-Justice Tanenbaum in his concurrence in Shands Jacksonville Med. Ctr. Inc. v. Chavez, 416 So. 3d 1226 (Fla. 1st DCA 2025) persuasive. We therefore only quash the order to the extent it bears on the threshold compensability issue. See id. at 1228 (Tanenbaum, J., concurring in result only) ("The judicial power . . . is the only sovereign power that can *conclusively* decide disputes over *personal* rights between *private* parties."); id. at 1241 (Tanenbaum, J., concurring in result only) ("[Q]uasi-judicial power has no self-executing authority—no legal effect—beyond the

## I

After their infant sustained a neurological injury due to a delayed cesarean section, respondents, Luigi Esposito and Immacolata Cantalena, filed suit against the Hospital and its Executives, including the chief executive officer, vice president of risk management and performance improvement, and vice president of patient safety.  See Esposito v. Mount Sinai Med. Ctr. of Fla., Inc., No. 2024-018898-CA-01 (Fla. 11th Cir. Ct. Dec. 27, 2024). ("Esposito I").  The multi-count complaint alleged negligence and breach of fiduciary duty against each of the Executives, individually, and vicarious liability against the Hospital.  The gravamen of the complaint was that the

---

confines of the agency within which the power is exercised. It cannot, for instance, have final, preclusive effect on the rights between private parties, without subsequent court action, lest it become the exercise of judicial power by the executive branch itself." (citing Wellness Intern. Network, Ltd. v. Sharif, 575 U.S. 665, 713 (2015) (Thomas, J., dissenting) (explaining that the "exercise of judicial power," rather than quasi-judicial power, "is required when the government want[s] to act authoritatively upon core private rights that had vested in a particular individual." (citation omitted))); see also Chavez, 416 So. 3d at 1251–52 (Tanenbaum, J., concurring in result only) (noting "the slow but steady erosion of the judicial branch's power in favor of the perceived convenience of executive adjudications within an ever-growing administrative state," and explaining "[i]t will be up to future Plan claimants to recognize and challenge" this erosion: "The claimant, after all, is the one who ultimately stands to lose if it continues—for when the constitutionally vested judicial power is diminished and not jealously guarded, a citizen's rights tend not to be far behind.").

3

Executives failed to implement systems and processes to guard against the delay that occurred, and these failures directly and proximately caused their infant's injury.

Shortly thereafter, respondents filed a companion action, asserting medical negligence against the two obstetricians who delivered the infant and direct negligence and vicarious liability claims against the Hospital. See Esposito v. Mount Sinai Med. Ctr. of Fla., Inc., No. 2024-24537-CA-01 (Fla. 11th Cir. Ct. Dec. 27, 2024) ("Esposito II"). The breaches and injuries alleged against the Hospital were identical to those asserted in Esposito I, and the two cases were consolidated for purposes of discovery and pretrial motions.

The defendants filed separate motions to abate and stay discovery in Esposito I and Esposito II. In both motions, the defendants contended that the dispute should be first transferred to the ALJ for a determination as to compensability under chapter 766, Florida Statutes (2025). The trial court denied the motion as to Esposito I but referred Esposito II to the ALJ. The court reasoned that the former case turned on negligence arising out of "procedures and protocols," and while the Hospital was a participating provider in NICA, the Executives purportedly were not. Nor were any Executives personally involved in the labor or delivery. The instant petition ensued.

4

## II

## A

For certiorari relief, the petitioner must establish: "(1) a departure from the essential requirements of law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on postjudgment appeal." See Williams v. Oken, 62 So. 3d 1129, 1132 (Fla. 2011) (citations omitted). The latter prongs are jurisdictional. See Dade Truss Co. Inc. v. Beaty, 271 So. 3d 59, 62 (Fla. 3d DCA 2019). Florida courts have consistently found that certiorari jurisdiction lies to review an abatement order. See Diaz v. Florida Peninsula Ins. Co., 204 So. 3d 460, 462 (Fla. 4th DCA 2016). This extends to orders denying a motion to abate pending a chapter 766 compensability determination. See Univ. of Miami v. M.A., 793 So. 2d 999, 999 (Fla. 3d DCA 2001); see also Siegfried v. Avila-Cana, 392 So. 3d 588, 590 (Fla. 4th DCA 2024).

## B

In 1988, the Florida Legislature established the NICA Plan in an effort to curtail skyrocketing medical malpractice insurance premiums for obstetricians. See Florida Birth-Related Neurological Inj. Comp. Ass'n v. Dep't of Admin., 29 So. 3d 992, 995 (Fla. 2010) (citing § 766.301, Fla. Stat. (1997)). NICA replaces traditional tort liability with a state-run no-fault

5

system of compensation for birth-related neurological injuries.  See id.  The statutory scheme affords an exclusive source of compensation for "a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation."  See § 766.301(2), Fla. Stat.[2]

Florida licensed physicians practicing in the obstetrics field are eligible to participate in the NICA Plan by paying an annual fee.  See Fla. Birth-Related Neurological Inj. Comp. Ass'n v. Carreras, 633 So. 2d 1103, 1105 (Fla. 3d DCA 1994) (noting that funds for the NICA plan "are obtained from assessments on physicians and hospitals." (citing § 766.314, Fla. Stat. (1991)); see also id. ("The assessments established pursuant to this section shall be used to finance the Florida Birth-Related Neurological Injury Compensation Plan.")).  Where an infant sustains a birth-related injury at the hands of a participating physician, the plaintiff is prohibited from bringing a civil action without first proceeding under chapter 766.  See § 766.304, Fla. Stat.  The statutory rights and remedies serve to the exclusion of all other

---

[2] Section 766.302(2), Florida Statutes (2025), defines a "birth-related neurological injury" as "injury to the brain or spinal cord of a live infant weighing at least 2,500 grams for a single gestation or, in the case of a multiple gestation, a live infant weighing at least 2,000 grams at birth caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired."

common law rights and remedies of the infant or his parents "against any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation," with certain discrete statutory exceptions. See § 766.303(2), Fla. Stat.

To this end, "[s]ection 766.304 provides the ALJ with exclusive jurisdiction to determine whether a claim is compensable under the [NICA] Plan." See Anderson v. Helen Ellis Mem'l Hosp. Found., Inc., 66 So. 3d 1095, 1098 (Fla. 2d DCA 2011). In rendering a compensability determination, the ALJ must assess whether, (1) the injury claimed is a birth-related neurological injury; (2) obstetrical services were delivered by a participating physician in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital; (3) the amount of compensation, if any, awardable under section 766.31; and (4) if relevant, the factual determinations regarding the notice requirements in section 766.316 are satisfied. See id. (citing § 766.304, Fla. Stat.).

Compensability findings are a prerequisite to any civil action. See § 766.304, Fla. Stat. ("No civil action may be brought until the determinations under § 766.309 have been made by the [ALJ]."); M.A., 793 So. 2d 999–1000 (concluding the trial court departed from the essential requirements of law because it denied a motion to abate a civil action where

7

an ALJ had not yet made a compensability determination under NICA); <u>Univ. of Miami v. Exposito ex rel. Gonzalez</u>, 87 So. 3d 803, 811 (Fla. 3d DCA 2012) ("[T]he ALJ's determination of compensability serves as a threshold issue for any person who wishes to pursue a NICA claim; likewise, the ALJ's determination of non-compensability is a threshold issue for any person who wishes to pursue a civil action in circuit court.").

## C

Here, respondents alleged their infant suffered a neurological birth-related injury.  The Hospital and Executives invoked NICA immunity.  These factors, coupled with the abatement in the companion case and the delivery by participating obstetricians, support the conclusion that a compensability determination by the ALJ is a precondition to maintaining suit.  We therefore quash the order under review to the extent it bears on the threshold compensability issue.

Petition granted, in part.